IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| United States of America, | ) |
| :--- | :--- |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 09-233 |
| 275.81 Acres of Land, More or Less, Situated in Stonycreek Township, Somerset County, Commonwealth of Pennsylvania, and Svonavec, Inc. | ) |
| Defendant. | ) |

AMBROSE, Senior District Judge

## OPINION
## AND
## ORDER OF COURT

The factual and procedural details of this condemnation action are well known to the parties and I need not repeat them in detail here. In short, the United States of America filed a Complaint for Condemnation on September 1, 2009, for the taking of property under the power of eminent domain and for the ascertainment and award of just compensation to the owners and parties in interest. (Docket No. 1). The subject property consists of 275.81 acres of land owned at the time of taking by Defendant, Svonavec, Inc., and located in Stoneycreek Township, Somerset County, Pennsylvania. This site includes approximately six acres of land on which United Airlines Flight 93 crashed on September 11, 2001. The United States acquired a fee simple estate in the 275.81 acres subject to existing easements and certain rights of third parties. See Docket No. 1. The public use for which the property was taken was for the administration, preservation, and development of a Flight 93 National Memorial. Id. Svonavec, Inc. has requested a jury trial on the issue of just compensation. (Docket No. 21).

Pending is the United States' Motion to Determine Defendant Svonavec, Inc.'s Rights to Mine Coal Underlying the Entire Subject Property. (Docket No. 87). Through its Motion, the

1

United States seeks a determination that, as of the date of the taking, Defendant did not possess the right to mine coal underlying any part of the subject property with the exception of eight acres of coal that the parties agree Defendant owns. The United States filed its motion in response to an assertion that Defendant made in late 2011 that it possesses the right to mine the underlying coal on the entirety of the subject property. After a careful review of the submissions by the parties and for the reasons discussed in this Opinion, I agree with the United States that Defendant has not shown that it possessed any such mining rights.

### I. **Background**

As set forth above, on or about September 2, 2009, the United States acquired the 275.81 acres of land at issue by eminent domain for use as the Flight 93 National Memorial. Specifically, the United States obtained a fee simple estate in the land subject to certain enumerated exclusions such as easements and certain rights of third parties. See Docket No. 1. The third-party rights to which the acquisition was subject include, *inter alia*, all of the coal underlying the subject property with the exception of eight acres of coal that the parties agree Svonavec, Inc. owned. See id. Schedule B.

For purposes of this action, the parties do not dispute that at the time of the taking in September 2009, Svonavec, Inc. owned the 275.81 acres of surface land at issue. It likewise is undisputed that Svonavec, Inc. never *owned* any of the coal underlying the subject property with the exception of the eight acres mentioned above. As the documentation shows and the parties agree, an entity called the Conservation Fund purchased the underlying coal from the prior owner, PBS Coals, Inc., on December 9, 2003. See Docket No. 96-7 at 69-74 (recorded deed). On December 2, 2010, the Conservation Fund conveyed the coal to the United States via special warranty deed. See id. at 75-85 (recorded special warranty deed).[1] The United States

---

[1] These instruments conveyed all of the underlying coal with the exception of the right to mine and remove all of the "B" or Miller vein of coal lying 325 feet or more below the surface together with all mining rights necessary to mine the B/Miller vein of coal. Said rights regarding the B/Miller vein of coal were

2

concedes, however, that if Svonavec, Inc. has mining rights to any portion of the coal, a determination must be made as to the contributory value, if any, those rights have to the fair market value of the entire 275.81 acres acquired in this action. Pl.'s Mot. (Docket No. 87) at 7. Thus, the only issue presently before me is whether Svonavec, Inc. possessed any such mining rights at the time of the taking, *i.e.*, on September 2, 2009.

**II. Applicable Standards**

The United States has the authority to take private property for use by eminent domain, provided that it satisfies its Fifth Amendment obligation to provide "just compensation" to the owner thereof. United States v. 6.45 Acres of Land, 409 F.3d 139, 145 (3d Cir. 2005) (quoting Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 9-10 (1984)). "In general, 'just compensation' means 'the fair market value of the property on the date it is appropriated.'" Id. "The guiding principle of just compensation . . . is that the *owner* of the condemned property must be made whole but is not entitled to more." Id. at 145 n.11 (quoting United States v. 564.54 Acres of Land, 441 U.S. 506, 516 (1979) (emphasis in original)).

Rule 71.1 of the Federal Rules of Civil Procedure governs condemnation proceedings in district courts. Fed. R. Civ. P. 71.1. As set forth in Rule 71.1(h), the court in a federal eminent domain action tries all issues including compensation, except that compensation must be determined, inter alia, by a jury when a party demands one. Thus, legal and factual issues other than just compensation, including disputes over title to the land at issue, are for the court to decide. See, e.g., United States v. 1,629.6 Acres of Land, 503 F.2d 764, 766-67 (3d Cir. 1974) (court has the power to resolve title disputes involving condemned land); United States v. Atomic Fuel Coal Co., 383 F.2d 1, 3 (4th Cir. 1967) (interest of party in mineral rights should have been determined by the court before directing the ascertainment of just compensation); United States v. 9.28 Acres of Land, Civ. A. No. 06-1082, 2008 WL 341715, at *2 (W.D. Pa.

---

reserved unto Berwind Corporation, a prior owner of the coal. See Docket No. 96-7 at 69-85. Neither instrument refers to any other mining rights.

Feb. 7, 2008). The claimant bears the burden of establishing its interest in the property in question. See Washington Metro. Area Transit Auth. v. One Parcel of Land in Prince George's County, 197 F. Supp. 2d 339, 342 (D. Md. 2002) (citing cases).

**III. Analysis**

As set forth above, the sole issue before me is whether, at the time of the taking on September 2, 2009, Svonavec, Inc. possessed the right to mine coal underlying any part of the subject property other than the eight acres previously identified by the parties.[2] After careful review of the parties' submissions, including the voluminous appendices and documents contained therein, I find that Svonavec, Inc. has not established that it possessed such mining rights at the time in question.

Putting aside questions regarding the timing of, and variations in, Defendant's position on the mining rights issue, I find that neither the documentation on which Defendant now purports to rely nor any other documentation of record supports its mining rights claim. In its briefing, Svonavec, Inc. describes the "relevant lease interest" in the coal at issue as follows:

1. Wilmore-Cambria Lease: Defendant identifies the "foundational coal lease" in this matter as a November 14, 1956 lease from then coal-owner Wilmore Coal Company to Cambria Fuel Company. Def.'s Br. (Docket No. 94) at 6-7. Defendant, however, has not supplied a copy of this alleged lease. Rather, Defendant cites to a reference to this lease contained in a May 31, 1962 Supplemental Agreement between Cambria and Svonavec Coal Company. See Docket No. 96-8 at 11-13.[3] Defendant's only other documentation of this lease is

---

[2] In his deposition, Michael Svonavec testified that the eight acres of coal already had been surface mined and that the remaining coal on those acres would require "deep mining on lower seams." He further stated that there were not "any economically mineable seams today" in those eight acres. Svonavec Dep. (Docket No. 87-9) at 144:8-16; 141:23-142:9; 145:14-20; 146:13-25.

[3] Specifically, the May 31, 1962 Supplemental Agreement states as follows:

a purported reference to the lease in a November 1, 1962 document titled "Assignment of Rents and Royalties Under Mineral Leases as Collateral Security" between Wilmore Coal Company as Assignor and the First Pennsylvania Banking and Trust Company. See Docket No. 96-8 at 14-28 (recorded in Somerset County Deed Book Vol. 585, Page 275).[4] Other than the references in these two documents, I do not have any evidence of the existence of the Wilmore-Cambria lease or its terms.

2. <u>Cambria-Svonavec Coal Lease</u>: Defendant next identifies, and provides a copy of, a September 1, 1961 Lease between Cambria Fuel Company (Lessor) and Svonavec, Inc.'s predecessor, Svonavec Coal Company (Lessee). See Docket No. 96-8 at 2-10.[5] Defendant cites this Lease Agreement as the direct source of its claimed mining rights. The Cambria-Svonavec Lease provides, *inter alia*:

---

> WHEREAS, the said Cambria Fuel Company is the Lessee of said coal from The Wilmore Coal Company, a corporation organized under the Laws of the said Commonwealth, as Lessor, by the terms of a certain agreement dated November 14, 1956, wherein it is provided as follows:
>
>> "TO HAVE AND TO HOLD the hereinbefore described rights and privileges, excepting and reserving as aforesaid, unto the said LESSEE, for the term of one (1) year commencing on the third day of December, 1956, and continuing thereafter upon the same terms and conditions for a further period of one (1) year, and so on, from year to year; unless terminated by either of the parties hereto by serving written notice unto the other party sixty (60) days in advance of the end of the then current yearly term, advising of its intent to so terminate."

Docket No. 96-8 at 11.

[4] This document appears to identify the November 14, 1956 Wilmore – Cambria lease as "Lease # 174" and describes the term of that lease as for "one (1) year beginning 12-3-56, and continuing thereafter for one year terms, subject to cancellation on 60 days notice prior to end of any one year term." Docket No. 96-8 at 17. The document also appears to identify a June 12, 1961 "Supplement #2" to that lease that added 545.75 acres of all coal owned by Wilmore. See id. Based on other documentation of record, it appears that this additional 545.75 acres is the parcel that includes the coal at issue in this case. Again, however, I do not have the actual lease agreements to make a conclusive determination on that issue.

[5] Defendant has not produced a copy of the original lease document. Rather, the document Defendant has supplied is labeled "COPY" and indicates in the margin that it is a "copy made up for Svonavec Coal

5

> . . . LESSOR does hereby give and grant unto the LESSEE, under and subject to all of the exceptions and reservations, terms, and conditions hereinafter contained, for the period of time hereinafter mentioned, the exclusive right and privilege to mine and take away by strip mining methods only all of the seams of coal in, or underlying those certain pieces, parcels or tracts of land situate in Stoneycreek Township, Somerset County, Pennsylvania, containing in the aggregate 545.75 acres, more or less, as shown with yellow tint on the white print map attached hereto and made a part hereof . . . .
>
> TOGETHER with the right to mine and remove the said coal by strip mining methods only in accordance with the mining rights vested in the LESSOR, it being distinctly understood and agreed upon that the LESSOR grants only such mining rights and privileges as it possesses by this agreement. . . .
>
> TO HAVE AND TO HOLD the hereinbefore described rights and privileges, excepting and reserving as aforesaid, unto the said LESSEE, for the term of one (1) year commencing on the first day of September, 1961, and continuing thereafter upon the same terms and conditions for a further period of one (1) year, and so on, from year to year, unless terminated by either of the parties hereto by serving written notice unto the other party sixty (60) days in advance of the end of the then current yearly term, advising of its intent to so terminate.

Docket No. 96-8, at 3-4. The seven-page Lease includes numerous other provisions including rent and royalty payment information, mine operation and inspection provisions, and other terms and conditions. Among these provisions is an assignment clause that states, *inter alia*, "[t]he LESSEE shall not transfer, assign or mortgage or encumber with liens of any kind the estate hereby granted either in whole or in part, or sublet the premises or any part or portion thereof, or interest or associate therein any other person or corporation, without the prior written consent of the LESSOR." Id. at 8. The Agreement concludes with a "Possession" clause stating that "[t]he LESSEE shall surrender the herein

---

Company at their request due to the fact that they have not been able to locate their executed copy of the original agreement." Docket No. 96-8 at 3-10.

demised premises upon the completion of the strip mining of all of the seams of coal, and shall deliver up peaceable possession of the premises to the LESSOR upon the expiration or earlier termination of this agreement." Id. at 9.[6]

3. <u>Cambria-Svonavec Coal Co. Supplement</u>: Defendant also has supplied a copy of a May 31, 1962 Supplemental Agreement between Cambria Fuel Company and Svonavec Coal Company. Id. at 11-13. This Supplemental Agreement makes slight changes to the Lease's termination provision and, as set forth above, is the document that contains a reference to the November 14, 1956 Wilmore-Cambria Lease.

4. <u>Svonavec Coal Co. – Ma-Ro Agreement</u>: Defendant next claims that Svonavec Coal Company granted the exclusive mining rights it obtained through the Cambria-Svonavec Lease to a company called Ma-Ro Mining Company in October 1968. Defendant, however, has not provided an executed copy of this alleged agreement. Although the documents Defendant provided to the United States contain several drafts and/or unexecuted copies of an agreement, none of these copies are final versions signed by Ma-Ro. See Docket Nos. 88-8, at 12-23 (unsigned by Ma-Ro); 88-17 at 17 – 88-18 at 9 (unsigned); 88-18 at 10 - 88-19 at 1 (unsigned by Ma-Ro). The incomplete and/or unexecuted drafts of the Agreement provide that Svonavec Coal Company grants to Ma-Ro the right to remove coal from the tracts of land shaded on an attached map and all of Svonavec's exclusive mining rights to the premises described therein. See id. ¶ 1. These rights include, among many other things, Svonavec Coal Company's

---

[6] Defendant's representative, Michael Svonavec, initially cited to a document he called the "Fry lease" as the source of Svonavec's mining rights. Svonavec Dep. (Docket No. 87-9) at 142, 156-57. The record contains a copy of what appears to be the "Fry lease." See Docket No. 88-10 at 25-35. In its briefing, however, Defendant does not mention the Fry lease as support for its claimed mining rights, and a review of that lease indicates that it involves coal lands unrelated to the coal at issue in this case. See id.

alleged rights under the Cambria-Svonavec Lease. See id. Ex. B (Docket No. 88-8 at 35-36, 45 – Docket No. 88-9 at 1-10).

5. <u>Ma-Ro – PBS Coals Lease</u>: Finally, Defendant contends that Ma-Ro subleased the mining rights it acquired from Svonavec Coal Company to PBS Coals, Inc. Defendant, however, has not produced a copy of this sublease or any other documentation supporting the existence, date, and/or terms of such a sublease. Defendant does not contend that it (Svonavec, Inc.) was actively mining the land at the time of the taking. Rather, Svonavec, Inc. appears to concede that PBS Coals, Inc. was the last entity to mine the land prior to the taking. See Docket No. 96-10 (Svonavec Affidavit ¶ 5).

See Def.'s Br. (Docket No. 94) at 6-7 & Docket No. 96-8 (Def.'s Supplemental Filing, Ex. H).[7]

In short, as the above descriptions demonstrate, Defendant relies primarily on missing, unrecorded, and incomplete documents to support its chain of title for the alleged coal leases. The existence, terms and/or validity of these documents are unknown and unknowable to the Court. Accordingly, I agree with the United States that Svonavec, Inc. has not shown that it possessed any right to mine the coal underlying the property at issue at the time of the taking other than the eight acres that are not in dispute.[8]

---

[7] The parties do not dispute that any interests in the land or coal at issue that Svonavec Coal Company possessed passed to Svonavec, Inc. when Svonavec, Inc. purchased Svonavec Coal Company in 1981.

[8] Even accepting Defendant's version of the chain of possession of the coal mining rights, there is no evidence that Svonavec, Inc. held those mining rights at the time of the taking. First, Svonavec, Inc. does not dispute that The Conservation Fund owned the coal as of the date of the taking. See Def.'s Br. (Docket No. 94) at 6. Defendant also acknowledges that the Conservation Fund purchased that coal in 2003 from the prior owner, PBS Coals, Inc. See id. Second, under Svonavec, Inc.'s claimed chain of possession of mining rights, PBS Coals, Inc. (as sublessee of Ma-Ro) also possessed the coal mining rights at the time The Conservation Fund purchased the coal. See id. at 6-9. Svonavec, Inc. has not provided any documentation indicating what rights, if any, it and/or Ma-Ro reserved as sublessor and there is no indication that PBS Coals, Inc. would have subleased anything other than the exclusive right to mine the coal that Defendant claims Svonavec Coal Company had subleased to Ma-Ro. Thus, even if Defendant's documentation were sufficient to show the alleged chain of possession of mining rights – which it is not – that documentation does not establish that Defendant held the mining rights at issue at the time of the taking.

**IV.	Conclusion**

For all of these reasons, the United States' Motion is granted. The record evidence is insufficient to support a finding that Svonavec, Inc. possessed any right to mine the coal in question as of the date of the taking. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>  vs.<br><br>275.81 Acres of Land, More or Less,<br>Situated in Stonycreek Township,<br>Somerset County, Commonwealth of<br>Pennsylvania, and Svonavec, Inc.<br><br>    Defendant. | Civil Action No. 09-233 |

AMBROSE, Senior District Judge

**ORDER**

AND NOW, this 16th day of October, 2012, it is hereby ORDERED that Plaintiff's Motion to Determine Defendant Svonavec, Inc.'s Rights to Mine Coal Underlying the Entire Subject Property (Docket No. 87) is granted. In this regard, I find that the record evidence is insufficient to establish that, at the time of the taking on September 2, 2009, Defendant, Svonavec, Inc. possessed the right to mine coal underlying any part of the subject property other than the eight acres previously identified by the parties.

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose
Senior Judge, U.S. District Court