IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 09-233 |
| 275.81 Acres of Land, More or Less, Situated in Stonycreek Township, Somerset County, Commonwealth of Pennsylvania, and Svonavec, Inc. | ) | |
| Defendant. | ) | |

AMBROSE, Senior District Judge

**OPINION
AND
ORDER OF COURT**

**I. BACKGROUND**

The factual and procedural details of this condemnation action are well known to the parties and I need not repeat them in detail here. In short, the United States of America filed a Complaint for Condemnation on September 1, 2009, for the taking of property under the power of eminent domain and for the ascertainment and award of just compensation to the owners and parties in interest. (Docket No. 1). The subject property consists of 275.81 acres of land owned at the time of taking by Defendant, Svonavec, Inc., and located in Stonycreek Township, Somerset County, Pennsylvania. This site includes approximately six acres of land on which United Airlines Flight 93 crashed on September 11, 2001. The United States acquired a fee simple estate in the 275.81 acres, including oil and gas rights and eight acres of coal, subject to existing easements and certain rights of third parties. See Docket No. 1. The public use for which the property was taken was for the administration, preservation, and development of a Flight 93 National Memorial. Id.

The parties in this case agreed that the issue of just compensation for the taking of the land involved should be determined by a commission, and I found that the appointment of such a commission was appropriate under Federal Rule of Civil Procedure 71.1(h)(2)(A) for just reasons, including the complex appraisal methodologies and valuation issues involved. See Docket Nos. 137, 144. Accordingly, On July 9, 2013, I appointed an impartial three-person commission pursuant to Rule 71.1(h) to determine just compensation to be paid to Defendant by the United States. See Docket No. 144. The Commission was comprised of two real estate appraisers and one real estate attorney. See id.

A trial on just compensation was held before the Commission on October 7-11, 2013. On December 9, 2013, the Commission issued a 72-page report concluding that the "just compensation" for the 275.81 acres of land in fee simple, including oil and gas rights and eight acres of coal, acquired by the United States under its power of eminent domain on September 2, 2009, is $1,535,000. (Docket No. 189).

Pending are the United States' Motion to Adopt in Part and Modify in Part Certain Findings of the Report of the Commission and Objections to the Report of the Commission (Docket No. 201) and Defendant's Objections to and Motion to Modify the Report of the Commission. (Docket No. 200). Each party opposes the other's Motion and Objections. (Docket Nos. 205, 206, 211, 214). The matter is now ripe for my review.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 71.1(h) permits the Court to appoint a three-person commission to determine compensation because of the character, location, or quantity of the property to be condemned, or for other just reasons. Fed. R. Civ. P. 71.1(h)(A). Pursuant to this Rule, the Commission has the powers of a master under Rule 53(c). Fed. R. Civ. P. 71.1(h)(D). Rule 53(d), (e), and (f) applies to the Commission's action and report. Id.

Rule 53(f)(3) requires that the Court decide *de novo* all objections to the Commission's findings of fact, unless the parties, with the Court's approval, stipulate that the findings will be reviewed for clear error. Fed. R. Civ. P. 53(f)(3). The parties in this case did not stipulate to a clear error review. Thus, I must apply the *de novo* standard to all objections to the Commission's factual findings. Rule 53(f) also requires me to decide *de novo* all objections to the Commission's conclusions of law, and to review any rulings on procedural matters under an abuse of discretion standard. Fed. R. Civ. P. 53(f)(4), (5).

In United States v. Merz, 376 U.S. 192 (1964), the United States Supreme Court provided guidelines regarding the sufficiency of a commission's report. Specifically, the Court held that although "commissioners need not make detailed findings such as judges do who try a case without a jury," they must "reveal the reasoning they use in deciding on a particular award, what standard they try to follow, . . . and so on." Id. at 198-99. Conclusory findings alone are not enough. Id. at 198. "The path followed by the commissioners in reaching the amount of the award [should] be distinctly marked" so that the Court knows "what path the commissioners took through the maze of conflicting evidence." Id. at 198-99 (reasoning that commissioners "will give more careful consideration to the problem if they are required to state not only the end result of their inquiry, but the process by which they reached it").

As set forth above, the Commission in this case filed a comprehensive 72-page report setting forth the path it took in reaching its valuation conclusion, the reasoning it employed, and the record evidence on which it based its decision. (Docket No. 189). This report more than satisfies the requirements set forth in Merz and has allowed me to undertake an informed and meaningful review. After careful consideration of the Report, the parties' submissions, the record, and applicable law, and for the reasons set forth below, I adopt the Commissioners' Report and the findings contained therein.

### B. Eminent Domain – Just Compensation

As I instructed the Commission prior to trial, the United States has the authority to take

private property for use by eminent domain, provided that it satisfies its Fifth Amendment obligation to provide "just compensation" to the owner thereof. United States v. 6.45 Acres of Land, 409 F.3d 139, 145 (3d Cir. 2005) (quoting Kirby v. Forest Indus., Inc., 467 U.S. 1, 9 (1984)). "In general, 'just compensation' means 'the fair market value of the property on the date it is appropriated.'" Id. "The guiding principle of just compensation . . . is that the *owner* of the condemned property must be made whole but is not entitled to more." Id. at 145 n.11 (quoting United States v. 564.54 Acres of Land, 441 U.S. 506, 516 (1979) (emphasis in original)). It is the landowner's burden to establish just compensation. Id.

Fair market value is determined by considering the subject property's "highest and best use." Specifically, the just compensation clause requires that "condemnees receive the value of the highest and best use for which the property is adaptable in the reasonably near future from the vantage point of the date of the taking." United States v. 68.94 Acres of Land, 918 F.2d 389, 393 (3d Cir. 1990) (citing Olson v. United States, 292 U.S. 246, 255 (1934)). Although the factfinder should not entertain mere speculative uses of the property, "evidence of a potential use should not be excluded merely because it depends upon the existence of extrinsic conditions." Id.

**C. Defendant's Objections and Motion to Modify the Report of the Commission**

Pending are Defendant's Objections to and Motion to Modify the Commission's Report. (Docket No. 200). Primarily, Defendant complains that the Commission erred in finding that the highest and best use of the property was a private memorial *only*, and not a private memorial *and* related museum/visitor's center as advocated by Defendant's appraisal expert, Randall Bell. This objection is without merit.

As carefully outlined in the Report, the Commissioners considered a museum/visitor's center as a potential use but rejected that use because, unlike a private memorial only, it could not conclude on the basis of the evidence presented that such a use was financially feasible. Report at 46-47. In explaining this conclusion, the Commission stated that Mr. Bell failed to

4

support his analysis with a marketability study from a qualified provider or other credible evidence showing and evaluating the costs, expenses, and risks of constructing and operating a museum/visitor's center on the site.  Id. at 46.  This lack of evidence left the Commission uncertain as to the design of the museum, its suitability for the site and market, and the contents of the museum.  Id.  As such, it could not accept Bell's projected numbers as plausible.  Id.  The Commission acknowledged that Mr. Bell, Mr. Svonavec, and, to some degree the United States' expert Gregory Jones, provided testimony on this topic at trial, but found that these experts lacked the expertise or experience to assess the feasibility of a planned museum and that none of the witnesses supported their reasons sufficiently for the Commission to accept their conclusions.  Id. at 46-47.

Although Defendant protests that Dr. Bell "is the foremost authority in the realm of real estate appraisals of this magnitude," and, therefore, that "common sense dictates that it is his unrivaled credibility that should determine the outcome of this matter" (Docket No. 214, at 4), such conclusions are not for Defendant to make.  Rather, as the instructions in this case made clear, the Commission was the sole judge of the credibility and reliability of the witnesses at trial. As set forth in the Report, the Commission rejected the portion of Bell's testimony at issue (including admission rates, concession figures, net operating income, capitalization rates, etc.) for numerous appropriate reasons, including, inter alia, that Bell's testimony was vague, improperly conflated business and land value, and/or failed to reflect the risks involved with an unconstructed museum/visitor's center operation on the property.  Report at 49-52.  I have carefully reviewed the Commission's credibility determinations under the appropriate standard and, based on the record evidence and my own observations at trial, find them to be accurate and well-supported.

Defendant's reliance on United States v. 6.45 Acres of Land, 409 F.3d 139 (3d Cir. 2005) (the "Gettysburg Tower case"), as support for its position that the highest and best use of the Property is necessarily a private memorial *and* a related museum/visitor's center is likewise

5

without merit. As the United States correctly explains in its Response, the Gettysburg Tower case is inapposite for numerous reasons. (Docket No. 205, at 5-7). Not least of these reasons is the fact that, at the time of the taking in the Gettysburg Tower case, the condemned land contained improvements, including a decades-old operating business, a 307-foot observation tower completed in 1974; and a gift shop, restaurant, and parking lot, operating in conjunction with the tower. 409 F.3d at 142. Because the business and structures predated the taking, the Gettysburg Tower appraiser had the benefit of actual operating figures and business data with which to work. Nothing in the Gettysburg Tower case supports Defendant's argument that the Commission was required to value the subject land based on Bell's vague and speculative testimony regarding a hypothetical, future museum and visitor's center.[1]

Although most of Defendant's objections relate to the Commission's rejection of portions of Dr. Bell's and/or Mr. Svonavec's testimony as explained above, several additional points merit brief discussion here. First, Defendant unpersuasively argues that the Commission erroneously applied the "scope of the project" rule to reject projected annual visitation number of 230,000 set forth in a report authored for the National Park Service by Bruce E. Lord of Pennsylvania State University. As I instructed the Commission at trial and in response to the Commission's post-trial questions, the "scope of the project" rule prohibits awarding compensation based on any enhancement or reduction in value attributable to the project for which the Government condemned the property; here, the United States' development of the public Flight 93 National Memorial. Thus, the Commission was not permitted to rely on information related to the United States' use and creation of a public memorial on the property to determine highest and best use and/or fair market value, because to do so would violate the scope of the project rule. The Commission was permitted, however, to consider relevant

---

[1] The appraiser at issue in the Gettysburg Tower case, David Lenhoff, also served as the United States' rebuttal expert in this case. To the extent Defendant cites Mr. Lenhoff's testimony and/or methodology in the Gettysburg Tower case in support of Mr. Bell's methodology here, such comparisons are inapposite for the same reasons set forth above.

6

information, if any, contained in the evidence that is general to the market, such as generic information about the market area, existing infrastructure on the property, physical aspects of the subject property, the availability of artifacts, and other considerations that any private developer would consider in assessing the demand for and/or viability of a private memorial on the subject property.

Here, the Commission appropriately found that the 230,000 visitation number contained in the Lord Report fell within scope of the project rule because it was not generic to the market, but was projected solely for a fully-developed public museum and visitor's center operated by the National Park Service. Report at 50. Even if I agreed that the Commission erred in this regard – which I do not – it alternatively rejected the 230,000 visitation number because there was no evidence that 230,000 or more people visited the site prior to the date of taking and the projection was based on an assumption that people would come to the site in higher numbers as the result of improvements being added to the property after the date of taking. Such post-taking improvements included content that would be part of a business operation and not fairly attributable to the land. Id. at 50-51.

Second, Defendant argues that the Commission had no basis to assess environmental cleanup costs to the property because those costs would be paid for by a responsible third-party or that the separate cost of a parking lot would remedy the environmental contamination. Docket No. 200, at 22. Although the Commission recognized that the ultimate responsibility for these remediation costs might rest with a third party, it appropriately concluded that given the uncertainties of recovery from other parties and the prospect of delay in pursuing those parties, that a reasonably knowledgeable buyer would include remediation costs in determining price. Report at 67.

Third, Defendant argues that the Commission failed to account for the contributory value of the condemned oil and gas interests after the parties stipulated that the value of those interests was $105,000. Docket No. 200, at 21. This argument likewise is without merit. After

trial, the Commission was properly instructed that if the condemned land contains a mineral deposit, it is proper to consider this fact in determining the market value of the land as a whole, but it is not permissible to determine the market value of the land as a whole simply by adding the individual value of the mineral deposit to the value of the land as a unit. Docket No. 188, at 2 (explaining the "unit rule"). In accordance with these instructions, the Commission did not simply add the $105,000 to a calculated land value. The Commission, however, appropriately accounted for the contributory value of the oil and gas interests when it applied less of a discount adjustment than that applicable to land development properties where such oil and gas value is not present. Report at 69-70. Although Defendant separately challenges the Commission's use of any discount rate in its valuation, I find that the Commission's discount-rate analysis is reasonable and well-supported by the record evidence. Report at 68-71.

Finally, Defendant ends by presenting an alternate calculation of just compensation in the amount of $5,745,600. Docket No. 200, at 24-25. This never-before-presented number is a far cry from the $23,300,000 valuation figure that Dr. Bell advocated at trial and that Defendant has urged throughout this case. Defendant contends the purpose of this calculation is to demonstrate that "even adopting the most conservative, yet adequately supported figures in this case, the Subject Property value is far greater than that found by the Commission." Docket No. 200, at 24-25. As Plaintiff aptly explains in its Response, Defendant appears to have reached this new figure by picking and choosing numbers from sources unrelated to the subject matter and presenting misleading comparisons to other data. Docket No. 205, at 1-2. Defendant has failed to demonstrate that these new numbers are appropriate, timely, reasonable, or relevant to the subject property. Accordingly, I do not consider them here.

In short, I have reviewed all of Defendant's objections and found them to be without merit. For the reasons set forth above, the objections are overruled and Defendant's Motion to Modify is denied.

**D. <u>Plaintiff's Objections and Motion to Adopt in Part and Modify in Part the Report of the Commission</u>**

Plaintiff also objects to and seeks modification of portions of the Commission's Report. (Docket No. 201). Like Defendant, but for different reasons, Plaintiff focuses its attack on the Commission's highest and best use finding. Plaintiff agrees that the Commission correctly rejected a private museum/visitor's center as the highest and best use. Unsurprisingly, Plaintiff also agrees with the Commission's acceptance of the testimony of its own appraisal expert, Gregory Jones, who concluded that open space/recreational use was physically possible, legally permissible, and financially feasible and that the property's value based on this use on the date of taking was $610,000. Id. at 1-2. Plaintiff disagrees, however, with the Commission's finding that the highest and best use of the property was as a private memorial. Id. at 1-4. Plaintiff portrays the private memorial as a third use proposed by neither party and unsupported by the record evidence. Plaintiff contends that once the Commission rejected a private museum/visitor's center as the highest and best use, it should have, by default, accepted open space/recreation as the only use that met the highest and best use criteria, and Mr. Jones' $610,000 valuation as the only valuation supported by the record evidence. Id. I disagree.

As an initial matter, I disagree with Plaintiff that the Commission went "beyond the evidence" and applied its own expertise to reach a highest and best use conclusion lacking evidentiary support. Although the instructions prohibited the Commissioners from basing any opinions on their own expertise in lieu of the record evidence, the instructions expressly permitted them to draw reasonable inferences from the evidence that they felt were justified by common sense and, similarly, to draw, from the facts found to have been proved, such inferences as seem justified in the light of their own experience. Docket No. 192 (10/7/13 Tr.), at 5, 8. Moreover, nothing in the instructions required the Commission to accept or reject any one expert's testimony *in toto*. Rather, the instructions correctly explained that the

Commissioners were the sole judges of a witness's credibility and reliability and of the weight to be given to the testimony of each witness. Id. at 8-9.[2]

After careful review of the Commission's Report and the record evidence in this case, I find that, while the Commission may at times have drawn reasonable inferences from the evidence justified in light of their own experience and common sense, at no time did the Commission go beyond the record and reach a conclusion unsupported by the evidence. Rather, the Commission carefully supported each element of its highest and best use and valuation analyses with citation to the evidence it considered. This evidence includes, *inter alia*, testimony and documentation that the use of the property as of the date of the taking was a memorial; evidence regarding annual visitation to the site prior to the taking; evidence regarding the topography and desirability of the land as a viewing site; testimony regarding admission rates, including Mr. Bell's "kiosk" testimony; the LECG appraisal; landowner testimony regarding expenses; and testimony and industry publications regarding capitalization and discount rates.

Moreover, the distinction between Defendant's proposed highest and best use (private memorial and museum/visitor's center) and the highest and best use found by the Commission (private memorial) is not as sharp as Plaintiff attempts to portray. Throughout this case,

---

[2] As I instructed the Commission, the Supreme Court in Merz cautioned that:

> [T]here is danger that commissioners, unlike juries, may use their own expertise and not act as a deliberative body applying constitutional standards. A jury, until it retires, sits under the direct supervision of the judge, who rules on the admissibility of evidence, who sees that witnesses are properly qualified as experts, and who polices the entire hearing, keeping it within bounds. Then in due course the judge instructs the jury on the law, answering any inquiries its members may have on the law. The jury is under surveillance from start to finish and subject to judicial control. Hence its general verdict that the land is worth so many dollars is not overturned for lack of particularized findings. The judge who uses commissioners, however, establishes a tribunal that may become free-wheeling, taking the law from itself, unless subject to close supervision.

376 U.S. at 197. Here, however, the Commission was under my direct supervision until it began deliberations. Not only was I present in the courtroom throughout the proceedings, but also, at the Commissioners' request, I made all evidentiary rulings, ruled on objections, and oversaw the qualification of expert witnesses. Thus, the concerns voiced by the Supreme Court were not present in this case. My personal supervision of the trial proceedings coupled with the Commission's comprehensive report and particularized findings, convince me that the Commissioners did not act as a free-wheeling body of experts, but, rather, carefully applied the law and based their findings on the record evidence as instructed.

Defendant has argued that the use of the property at the time of the taking was a private memorial. Although Dr. Bell valued a museum and visitor's center as part of his proposed highest and best use, the museum and visitor's center was always a component of a larger private memorial. In its Report, the Commission, as instructed, carefully rejected any evidence based on speculation and conjecture or that attempted to value a business as opposed to the land. In so doing, the Commission properly rejected a private memorial with a museum/visitor's center as the highest and best use. The record evidence that remained, however, fully supports the Commission's further conclusion that a private memorial alone met the highest and best use criteria.

Plaintiff additionally argues that the Commission erred in applying the income approach to value the property as a private memorial because it unreasonably assumed that no comparable sales of private memorials exist. (Docket No. 201, at 17-18). This argument is without merit. As I instructed the Commission, although evidence of comparable sales normally offers the best evidence of fair market value, the law is not wedded to any particular formula or any particular method for determining fair market value as the measure of just compensation. When evidence of comparable sales is unavailable, other methods of valuation such as the income capitalization approach may be appropriate to determine market value. Here, the Commission rightfully found that the events of September 11, 2001, rendered the subject property unique, and, thus, that comparable sales are not available. This finding holds true whether the property is valued as a private museum/visitor's center or a private memorial alone.

For all of these reasons, I reject Plaintiff's argument that the Commission went beyond the record and relied on its own expertise to value the property. Plaintiff's objections are overruled and its Motion to Modify is denied.

### III. CONCLUSION

In sum, I agree with the Commission in this case that the crash of Flight 93 on September 11, 2001, undeniably imbued the subject property with a national significance and

intrinsic value that is neither transferable nor comparable to otherwise similar parcels. Faced with this unique valuation scenario, the Commission fairly and admirably analyzed and weighed the record evidence and correctly applied the relevant law to determine just compensation in this case. After careful consideration of the Commissioner's Report, the record evidence, the parties' objections, and applicable law, I agree that $1,535,000 represents the "fair market value" of the property – *i.e.,* the amount for which in all probability the property would have sold on the date of the taking, after a reasonable exposure time on the open competitive market, from a willing and reasonably knowledgeable seller to a willing and reasonably knowledgeable buyer, with neither acting under any compulsion to buy or sell, giving due consideration to all available economic uses of the property at the time of the taking. For these and all of the reasons set forth herein, the parties' objections to the Report are overruled, and I hereby adopt the Report in its entirety.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> 275.81 Acres of Land, More or Less, ) <br> Situated in Stonycreek Township, ) <br> Somerset County, Commonwealth of ) <br> Pennsylvania, and Svonavec, Inc. ) <br> ) <br> Defendant. | Civil Action No. 09-233 |

AMBROSE, Senior District Judge

**ORDER**

AND NOW, this 26th day of March, 2014, it is hereby ORDERED that the Report of the Commission dated December 9, 2013 in the above-captioned case (Docket No. 189) is hereby adopted in its entirety. Just compensation the fee simple estate in the 275.81 acres of land owned by Defendant, Svonavec, Inc., and located in Stonycreek Township, Somerset County, Pennsylvania, including oil and gas rights and eight acres of coal, is set at $1,535,000.

Defendant's Objections (Docket No. 200) and Plaintiff's Objections (Docket No. 201) are overruled. Plaintiff's Motion to Adopt in Part Certain Findings of the Report of the Commission (Docket No. 201) is denied as moot, and Plaintiff's Motion to Modify in Part Certain Findings of the Report of the Commission (Docket No. 201) is denied. Defendant's Motion to Modify the Report of the Commission (Docket No. 200) is denied.

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose
Senior Judge, U.S. District Court