IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 09-233 |
| ) | |
| 275.81 Acres of Land, More or Less, ) | |
| Situated in Stonycreek Township, ) | |
| Somerset County, Commonwealth of ) | |
| Pennsylvania, and Svonavec, Inc. ) | |
| ) | |
| Defendant. | |

AMBROSE, Senior District Judge

## **MEMORANDUM OPINION AND ORDER OF COURT**

The factual and procedural details of this condemnation action are well known to the parties and I need not repeat them in detail here. In short, the United States of America filed a Complaint for Condemnation on September 1, 2009, for the taking of property under the power of eminent domain and for the ascertainment and award of just compensation to the owners and parties in interest. (ECF No. 1). The subject property consists of 275.81 acres of land owned at the time of taking by Defendant, Svonavec, Inc., and located in Stonycreek Township, Somerset County, Pennsylvania. This site includes approximately six acres of land on which United Airlines Flight 93 crashed on September 11, 2001. The United States acquired a fee simple estate in the 275.81 acres, including oil and gas rights and eight acres of coal, subject to existing easements and certain rights of third parties. See ECF No. 1. The public use for which the property was taken was for the administration, preservation, and development of a Flight 93 National Memorial. Id.

The parties in this case agreed that the issue of just compensation for the taking of the land involved should be determined by a commission, and I found that the appointment of such a commission was appropriate under Federal Rule of Civil Procedure 71.1(h)(2)(A) for just

reasons, including the complex appraisal methodologies and valuation issues involved. See Docket Nos. 137, 144.  Accordingly, On July 9, 2013, I appointed an impartial three-person commission pursuant to Rule 71.1(h) to determine just compensation to be paid to Defendant by the United States.  See ECF No. 144.

A trial on just compensation was held before the Commission on October 7-11, 2013. On December 9, 2013, the Commission issued a 72-page report concluding that the "just compensation" for the 275.81 acres of land in fee simple, including oil and gas rights and eight acres of coal, acquired by the United States under its power of eminent domain on September 2, 2009, is $1,535,000.  (ECF No. 189).  On March 26, 2014, I entered an Order adopting the Report of the Commission.  (ECF No. 215).  On that same date, I entered a Judgment in the amount of $1,535,000 as just compensation for the Government's taking of Defendant's interest in the subject property.  (ECF No. 216).

Pending is Defendant's Motion to Amend Judgment to Include Mandatory Award of Interest.  (ECF No. 217).  The Motion requests an award of interest on the unpaid balance of the judgment as well as an award of interest on alleged wrongful detention of estimated just compensation.  Id.  The United States opposes Defendant's Motion.  (ECF No. 218).  For the reasons set forth herein, Defendant's Motion is granted in part and denied in part.

I. **Appropriate Interest Rate**

The Declaration of Taking Act provides that:

> Compensation shall be determined and awarded in the proceeding and established by judgment. The judgment shall include interest, in accordance with section 3116 of this title, on the amount finally awarded as the value of the property as of the date of taking and shall be awarded from that date to the date of payment. Interest shall not be allowed on as much of the compensation as has been paid into the court. Amounts paid into the court shall not be charged with commissions or poundage.

40 U.S.C. § 3114(c)(1).  Section 3116 of the Act, in turn, provides that the "district court shall calculate interest required to be paid" under the Act as follows:

> (1) Period of not more than one year.--Where the period for which interest is owed is not more than one year, interest shall be calculated from the date of taking at an annual rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of taking.
>
> (2) Period of more than one year.--Where the period for which interest is owed is more than one year, interest for the first year shall be calculated in accordance with paragraph (1) and interest for each additional year shall be calculated on the amount by which the award of compensation is more than the deposit referred to in section 3114 of this title, plus accrued interest, at an annual rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the beginning of each additional year.

40 U.S.C. § 3116(a).

Here, the parties do not dispute that Defendant is entitled to an award of interest on the unpaid balance of the judgment in this case. The parties disagree, however, as to the rate of interest that should apply. The Government contends that I should apply the interest rate set forth in 40 U.S.C. § 3116(a), outlined above. Despite the mandatory language of the statute, Defendant argues that this rate is inadequate and that a different, higher interest rate – *i.e.*, Moody's Aaa Long-Term Corporate Bond Yields – should govern.

Defendant's minimal arguments in support of its position are unpersuasive. As an initial matter, most of the case law upon which Defendant relies in support of a higher interest rate involves takings not governed by the DTA and/or takings that pre-date the 1986 amendments to the DTA that added the variable interest rate formulation now provided in the statute.[1] In addition to the unambiguous mandatory language of the amended interest provision, the legislative history surrounding the 1986 amendments makes clear that Congress's intent in enacting the amendments was to "provide for uniformity in the district courts in their determination of the appropriate rate of interest to be applied in condemnation cases." United States v. Certain Land Situated in the City of Detroit, Wayne County, Michigan, 286 F. Supp. 2d 865, 870 (E.D. Mich. 2003), aff'd 450 F.3d 205 (6th Cir. 2006). In particular, the House

---

[1] The DTA's original interest provision, enacted in 1931, provided for fixed interest at a rate of 6% per annum.

Judiciary Committee's Report accompanying the bill that ultimately became law stated that the "purpose of H.R. 5363 is to amend the interest provisions of the Declaration of Taking Act . . . to establish a uniform statutory rate of interest in eminent domain cases."  H.R. Rep. 99-914, reprinted in 1986 U.S.C.C.A.N. 6202.  The Report further noted that "this legislation will solve a long-standing problem encountered in eminent domain cases brought in district courts under the Declaration of Taking Act regarding the appropriate rate of interest"; and that "[t]his bill would make their application uniform and consistent among the courts.  It would also eliminate the treatment of the interest rate as a question of fact to be determined by the courts."  1986 U.S.C.C.A.N. at 6203-6205.  This policy of uniformity counsels against application of a different interest rate in this direct taking case.

Even assuming I have the discretion to find that the current statutory rates are unconstitutionally low, I decline to do so here.  As the United States correctly explains, the courts that have engaged in a constitutional analysis have looked to whether the landowner has demonstrated with particularity the inappropriateness of applying the interest rates set forth in the Act in each particular case.  See, e.g., United States v. 50.50 Acres of Land, 931 F.2d 1349, 1355 (9th Cir. 1991) ("[T]he court first must determine if the statutory formula is constitutionally inadequate given the factual circumstances of the case."); Vaizburd v. United States, 67 F. Cl. 499, 504 (2005) ("In the absence of special proof that a rate other than that approved for use in statutory condemnations is appropriate, we use that rate.").  Absent such a showing, courts have routinely applied the variable statutory rate.  See Vaizburd, 67 F. Cl. at 504; Pettro v. United States, 47 F. Cl. 136, 155 (2000) (1-year Treasury bill rates accounted for inflation while avoiding a reward for risks the landowner did not undertake.); United States v. Certain Land Situated in the City of Detroit, Wayne County, 26 F. Supp. 2d at 871 (finding the statutory rate of interest provided the landowner what a reasonable and prudent investor would earn while investing though guaranteeing the safety of the principal), aff'd, 450 F.3d at 213.

The cases Defendant cites in support of its argument do not change this result. In addition to the fact that those cases do not involve direct takings under the DTA, the underlying facts are distinguishable. For example, in Biery v. United States, an inverse taking case, the Court of Federal Claims applied the Moody's rates over the DTA rate, but only after considering significant evidence, including expert testimony concerning prevailing economic conditions, interest rates, and other conditions as applied to the facts of that case. Biery v. United States, Nos. 07-693L & 07-675L, 2012 WL 5914521, at **2-5 (Ct. Fed. Cl. Nov. 27, 2012). Defendant's cursory motion does not come close to making such a showing in this case. The only "evidence" Defendant provides includes a list of the DTA rates and a list of the Moody's rates for the relevant time periods. See Def.'s Mot. Exs. A & B. Simply demonstrating that the two rates differ is not sufficient to show constitutional inadequacy. See United States v. Certain Land Situated in the City of Detroit, 450 F.3d at 213 (fact that landowner would have been better off had the money been tied to different indices over the period in question was not enough to suggest that the application of the statutorily required rate was error).

In light of the mandatory statutory language, and because Defendant has failed to demonstrate that the statutory formula for calculating interest is constitutionally inadequate under the facts of this case, I decline to depart from that formula. Interest on the final Judgment in this case shall be determined by application of the statutory rate of interest set forth in 40 U.S.C. § 3116(a), to be compounded annually in accordance with the Act.

## II. Calculation of Interest on Unpaid Balance

As set forth above, the judgment entered in this case totals $1,535,000. The parties agree that Defendant is not entitled to interest on the amount of estimated compensation already paid into Court – in this case, $611,000. Thus, Defendant ordinarily would be entitled to interest on $924,000 (the judgment less $611,000). See Pl.'s Resp. (ECF No. 218), Ex. 6. According to the Government's calculations, using the applicable DTA interest rates compounded annually, this interest amount would equal $10,088.95 through July 1, 2014, for a

total unpaid balance of $934,088.95.  See id.

In this case, however, the United States has submitted evidence that pursuant to a 2009 agreement between the National Park Service, the Families of Flight 93, and Defendant (ECF No. 218-3), and a subsequent escrow agreement (ECF No. 218-4), the Families of Flight 93 deposited $750,000 into an escrow account for the benefit of Defendant as a condition to Defendant not contesting the Government's right to condemn.  (ECF No. 218-3, 218-4). According to the United States, the $750,000 was delivered to Defendant on March 10, 2010. Of relevance here, the Agreement between NPS, the Families of Flight 93 and Defendant provides:

> The Parties agree that in the event the federal courts determine the amount of just compensation for the Revised Parcel does not exceed the amount of the deposit by Buyer [Department of the Interior] into the court registry and the amount of the Escrow deposit by the Families, [Defendant] shall be entitled to the deposited amounts and no more.  *The Parties agree that if the federal courts determine the amount of just compensation is greater than such combined deposits, then [Defendant] shall be entitled to receive an amount from the United States equal to the difference between the courts [sic] determination of just compensation and the total of the two deposits.*

ECF No. 218-3 ¶ G (emphasis added).   This contractual language entitles the United States to deduct from the judgment entered in this case both the $611,000 estimated just compensation it paid into Court and the $750,000 paid by the Families of Flight 93.  The United States further submits that the $750,000 is equivalent to an interim deposit and, therefore, Defendant is not entitled to statutory interest on that amount after the date those funds were delivered to Defendant, March 10, 2010.  Pl.'s Resp. at 10-11 & Ex. 6.

Defendant neither filed nor sought leave to file a Reply Brief addressing the $750,000 it received from the Families of Flight 93 or otherwise objecting to the Government's representations and calculations concerning the same.  In the absence of contrary evidence, the contractual language quoted above requires me to deduct both the $611,000 and $750,000 from the original judgment before calculating interest, resulting in a final interest award of $3,705.17.  Id. Ex. 6.  Using the Government's calculations, after deducting the advance and

interim deposits, the final amount due to Defendant as of July 1, 2014, including applicable interest using the rates prescribed by the DTA, is $177,705.17.  Id.

**III.      Award of Interest on Alleged Wrongful Detention of Estimated Just  Compensation**

Defendant further seeks an additional award of interest for the United States' alleged wrongful detention of estimated just compensation from on or about November 24, 2009 (the date Defendant moved to withdraw the estimated just compensation, ECF No. 25) to on or about February 24, 2010 (the date the estimated just compensation was disbursed, ECF No. 36).  Def.'s Mot., at 3-4.   Defendant argues that the United States wrongfully opposed its motion to withdraw the funds, and, in such circumstances, an award of interest on the amount of the deposit wrongfully withheld is appropriate.  See id. ¶¶ 11-12 (citing 27 Am. Jur. 2d *Eminent Domain* § 724).   I disagree.

As the United States notes in its response, the treatise to which Defendant cites in support of its argument further explains that "[t]he effectiveness (and sometimes the basis) of the government's opposition to the distribution of funds deposited with the court determines whether interest is chargeable against the United States."  27 Am. Jur. 2d *Eminent Domain* § 724.  In particular, "interest is not charged if distribution is opposed because of a dispute as to the validity of the title asserted by one or more claimants because, if there are competing interests in property, the government is entitled to be heard in respect to the validity of the claims and the amount which any applicant is entitled to withdraw."  Id.  Here, I ordered that the United States file a response to Defendant's November 24, 2009 Motion to Withdraw Estimated Just Compensation (ECF No. 25) by December 16, 2009.  The United States filed two such responses, both well within this deadline.  See ECF No. 26 (filed November 25, 2009) and ECF No. 29 (filed December 11, 2009).  On December 18, 2009, the United States filed a third response, this time to a reply brief that Defendant had filed two days prior.  See ECF Nos. 30, 31. On the next business day, December 21, 2009, I scheduled a status conference to discuss Defendant's Motion for January 5, 2010, and later rescheduled that same conference for

January 8, 2010. At the January 8, 2010 conference, it was agreed that Defendant would have two weeks to file a proposed order regarding the release of funds, including an escrow amount for school taxes and a thirty-day deadline for filing of claims. (ECF No. 32). Defendant filed the proposed order on January 21, 2010 (ECF No. 34), and I signed the order on the following day (ECF No. 36). According to Defendant's representation, the estimated just compensation was disbursed on or about February 24, 2010.

As the timeline above demonstrates, the United States responded and otherwise proceeded well within the deadlines I established with respect to Defendant's Motion to Withdraw. Moreover, the objections the United States filed each raised potential title issues, including a possible outstanding mortgage and school district taxes due. As set forth above, the government is entitled to be heard in respect to the validity of the claims and the amount which any applicant is entitled to withdraw. Thus, interest is not charged if distribution is opposed for such reasons. Accordingly, I reject Defendant's argument that the United States wrongfully retained Defendant's estimated just compensation award, and Defendant's request for interest on that amount is denied.

**IV. <u>Conclusion</u>**

For all of the reasons set forth herein, Defendant's Motion to Amend Judgment to Include Mandatory Award of Interest (ECF No. 217) is granted in part and denied in part. Defendant shall be entitled to an award of interest on the amount finally awarded as the value of the property as of the date of taking, less the amount of compensation that already has been paid into Court and the amount of compensation already paid to Defendant by the Families of Flight 93, calculated from the date of taking to the date of payment. The total interest award due and owing to Defendant as of July 1, 2014, shall be $3,705.17, resulting in a total judgment in the amount of $1,538,705.17 as just compensation for the taking of Defendant's interest in 275.81 acres of land, more or less, in Stonycreek Township, Somerset County, Pennsylvania.

Of that amount, $177,705.17 remains due and owing, payable by the United States to Defendant by July 1, 2014.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 09-233 |
| ) | |
| 275.81 Acres of Land, More or Less, ) | |
| Situated in Stonycreek Township, ) | |
| Somerset County, Commonwealth of ) | |
| Pennsylvania, and Svonavec, Inc. ) | |
| ) | |
| Defendant. | |

AMBROSE, Senior District Judge

**ORDER**

AND NOW, this 10th day of June, 2014, it is hereby ordered that Defendant's Motion to Amend Judgment to Include Mandatory Award of Interest (ECF No. 217) is granted in part and denied in part. Defendant shall be entitled to an award of interest on the amount finally awarded as the value of the property as of the date of taking, less the amount of compensation that already has been paid into Court and the amount of compensation already paid to Defendant by the Families of Flight 93, calculated from the date of taking to the date of payment. The total interest award due and owing to Defendant as of July 1, 2014, shall be $3,705.17, resulting in a total judgment in the amount of $1,538,705.17, as just compensation for the taking of Defendant's interest in 275.81 acres of land, more or less, in Stonycreek Township, Somerset County, Pennsylvania. After deducting amounts already paid to Defendant, the final amount due and owing from the United States is $177,705.17, payable to Defendant by July 1, 2014.

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose
Senior Judge, U.S. District Court